UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AXELL ESPINOZA ESPINOZA,

Petitioner,

v.

JAIME RIOS, Acting Field Office Director, Los Angeles Field Office, et al.,

Respondents.

Case No. 5:26-cv-03099-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

**A# 233-223-132**

Axell Espinoza Espinoza ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking a bond hearing or release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California.  Dkt. No. 1.  The Court has considered the Petition and Respondents' Answer, which does not present an opposition argument to Petitioner receiving a bond hearing before an immigration judge, and states "[s]hould the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the

General Order, no more filings or proceedings will be necessary in this matter." Dkt. No. 8 at 2.[1]

## I.    Background

Petitioner is a native and citizen of Nicaragua, who entered the United States on November 18, 2023, and was granted Humanitarian Parole pursuant to 8 U.S.C. § 1182(d)(5).[2]  Dkt. No. 1, Petition ¶ 20.  His parole was valid until November 16, 2025.  *See* Dkt. No. 1-1 at 2 (DHS Letter Authorizing Travel to the United States).  On October 4, 2024, Petitioner filed a timely I-589 application for asylum and for withholding of removal with the immigration court.  Petition ¶ 21; Dkt. No. 1-1 at 4.  His asylum claim is currently still pending, and he is presently in removal proceedings.  Petition ¶ 2.

While released on parole, Petitioner complied with all immigration requirements; he provided a valid address, appeared when required, and engaged with the immigration process in good faith.  *Id.* ¶ 21.  At no time did DHS allege that Petitioner posed a danger to the community or a risk of flight.  *Id.*

On May 8, 2026, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") and transferred to the Adelanto Processing Center, where he remains detained.  *Id.* ¶¶ 7, 22.  According to Petitioner, ICE detained him without identifying any material change in circumstances to

---

[1] The Court uses the page numbers inserted into the pleadings by the Court's electronic filing system.

[2] Attached as "Exhibit A" to the Petition appears to be a letter from the Department of Homeland Security ("DHS") stating that Petitioner was approved and "authorized to travel to the United States under the Nicaraguan parole process to seek parole." Dkt. No. 1-1 at 2.  The letter further states that "[t]his document does not grant you parole.  Upon arrival to the United States, a U.S. Customs and Border Protection (CBP) officer will make the determination on parole once you arrive at a port of entry.  You are responsible for arranging your own travel to the United States." *Id.*

justify the detention; DHS did not allege that Petitioner violated conditions, committed any crime, failed to appear, or otherwise engaged in conduct warranting his arrest. *Id.* ¶ 23. DHS also did not provide him with any individualized custody hearing. *Id.* ¶ 32. Petitioner further asserts that he has demonstrated good moral character, and has no convictions, arrests, or criminal history, and therefore is not subject to mandatory detention under 8 U.S.C. § 1226(c). *Id.* ¶¶ 3, 22–23.

## II.   Discussion

The Petition raises four claims: (1) violation of substantive due process under the Fifth Amendment; (2) violation of procedural due process under the Fifth Amendment; (3) unlawful detention in excess of statutory authority; and (4) violation of due process to order release or a bond hearing. Petition at 14–17.

### A.   Procedural Due Process

This Court and others in this District have found that re-detention, without notice or a pre-deprivation hearing, of a noncitizen who had been released on conditions shortly after their entry into the United States and had complied fully with those conditions, violated procedural due process. *See Cruz v. Lyons, et al.,* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering

release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Matthews* test balances three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1.   Private Interest

Petitioner has a substantial private interest in remaining out of custody. Petitioner has resided in the United States for approximately two and a half years, since November 18, 2023. During this time, he has had no arrests, convictions, or criminal history, and has demonstrated good moral character. Petition ¶ 3.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-

4

cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).[3]

## 2.    Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the risk of an erroneous deprivation of a petitioner's liberty interest is considerable where he has not received any bond or custody redetermination.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk).

In evaluating this risk, courts that have ordered release and a pre-deprivation hearing have considered the petitioner's compliance with all release conditions and criminal history.  *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609 at *2 (N.D. Cal. Aug. 22, 2025) (noting that petitioner who was released on her own recognizance did not violate the conditions of her release which included reporting for any hearing or interview); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *De Vasquez v. Chestnut*, No. 1:25-CV-1999-JDP, 2026 WL 25539 at *4 (E.D. Cal. Jan. 5, 2026) (noting that since release, "there has been no indication that [petitioner] has become a flight risk or danger to the community").  Petitioner

---

[3] Courts have found that noncitizens paroled into the United States under 8 U.S.C. § 1182(d)(5) have a liberty interest protected by the Fifth Amendment Due Process Clause, particularly where the noncitizen has been living in the United States on such parole for years.  *See, e.g.*, *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026*)* ("While the Government's initial decision to parole Petitioner was discretionary, *see* 8 U.S.C. § 1182(d)(5), that decision nonetheless contained an 'implicit promise that parole will be revoked only if he fails to live up to the parole conditions.'"); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

states that he has no criminal history and has consistently complied with all immigration requirements. Petition ¶ 24. Respondents do not contend that changed circumstances prompted revocation of Petitioner's release. *See* Dkt. No. 8.

Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Further, Petitioner's release was predicated on the Government's determination that Petitioner did not present a danger or flight risk requiring his detention. *See* 8 C.F.R. § 212.5 (permitting release on parole under 8 U.S.C. § 1182(d)(5)(A) in limited circumstances, "provided the aliens present neither a security risk nor a risk of absconding"). Respondents' Answer to the Petition does not present an opposition argument to Petitioner's due process claims or explain how Petitioner is not entitled to release.[4] *See* Dkt. No. 8.

Based on the record, there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary re-detention.

### 3.   Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a predetention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases).

---

[4] The absence of opposition to Petitioner's Fifth Amendment procedural due process claim itself is a basis to grant the Petition. *See Soleimani v. Larose*, No.: 25-cv-3082-DMS-DEB, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's answer to the petition did not respond to all claims in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, *4 (C.D. Cal. 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).

"[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]' " *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it declines to address Petitioner's remaining claim. Nothing prevents Petitioner from raising this claim again in the future, should the Government re-detain Petitioner following the procedures set forth above.

## III.   Conclusion

The Court grants the Petition based on Claim Two under procedural due process and dismisses the remaining claims without prejudice. The prayer for relief seeks an order enjoining Respondents "from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral judge in which the government bears the burden of proving, by clear and convincing evidence, that he is a flight risk or danger to the community."

7

Dkt. No. 1 at 18.  However, the Petition fails to provide a legal and factual basis for ordering such prospective relief at this time.

## IV.   Order

For the foregoing reasons, the Petition is GRANTED as to Claim Two, and the remaining claims are dismissed without prejudice.

Petitioner Axell Espinoza Espinoza (A# 233-223-132) is **ordered released** on his prior conditions of release within 24 hours of this Order.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report confirming Petitioner's release.

IT IS SO ORDERED.

DATED: June 17, 2026

_Patricia Donahue_

_____

Patricia Donahue
United States Magistrate Judge